## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

DIDI KENDALL SQUARE, LLC d/b/a
DUMPING DAUGHTER,

     Plaintiff,

  v.

DUMPLING GIRL, LLC,
JIE LIN,
YING YAO XIONG, and
HUANCHEN LI,

     Defendants.

**Case No.:**

## VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL

## INTRODUCTION

Nadia Liu Spellman, the daughter of renowned Boston chef Sally Ling, dreamed for decades of opening a restaurant herself.  In 2010 she began working on a plan to open a restaurant with: a trademarked name referencing and paying homage to her mother—Dumpling Daughter—that would offer a unique mix of dumpling and other dishes from different provinces in China and Japan; all set forth in a highly distinctive menu comprised of carefully developed proprietary recipes.  The restaurant has operated since 2014 to critical and customer acclaim.

This action involves blatant acts of commercial piracy by the Defendants, two of whom are former employees of Dumpling Daughter, who have opened a restaurant which is a virtual clone of Dumpling Daughter with the confusingly similar name, Dumping Girl, in the same area as Dumpling Daughter, offering dishes and a menu which are virtually identical to that of Dumpling Daughter down to its color scheme and punctuation, and which uses proprietary, trade

1

secret recipes misappropriated from Dumpling Daughter. The conduct of the Defendants constitute trademark infringement under 15 U.S.C., § 1114, unfair competition under 15 U.S.C., § 1125, unfair methods of competition under M.G.L. c. 93A, § 11, Massachusetts common law trademark infringement, Massachusetts common law unfair competition, misappropriation of trade secrets, proprietary and confidential information, conversion of trade secrets, proprietary and confidential information and unjust enrichment.

The Defendants have cavalierly and completely ignored two cease and desist letters from Dumpling Daughter's attorneys and have boasted of their copying and intent to continue to copy the Dumpling Daughter without consequences since Dumpling Daughter "can chase me for years because the LLC [Dumpling Girl] doesn't have any money."

## **PARTIES**

1.     Plaintiff DiDi Kendall Square, LLC, is a corporation organized under the laws of the Commonwealth of Massachusetts with a principal office located in Boston, Massachusetts that does business at 37 Center Street in Weston, Massachusetts under the name of Dumpling Daughter (hereinafter "Dumpling Daughter").

2.     Defendant Jie Lin (hereinafter "Lin") is an individual who, upon information and belief, resides in Quincy, Massachusetts. Lin is a former employee of Dumpling Daughter whose last day of employment there was on or about August 11, 2015.

3.     Defendant Ying Yao Xiong (hereinafter "Xiong") is an individual who, upon information and belief, resides in Westford, Massachusetts. Xiong is a former employee of Dumpling Daughter whose last day of employment there was on or about July 6, 2015.

4.     Defendant Huanchen Li (hereinafter "Li") is an individual who, upon information and belief, resides in Westford, Massachusetts.

5.     Defendant Dumpling Girl, LLC is a corporation organized under the laws of the Commonwealth of Massachusetts with a principal office located in Millbury, Massachusetts (hereinafter "Dumpling Girl").  Lin, Xiong, and Li are each Managers of Dumpling Girl, which was organized on or about July 13, 2015.

## JURISDICTION AND VENUE

6.     Jurisdiction in this Court is proper as this Complaint poses federal questions arising under particular federal statutes, including the Federal Trademark Act (the "Lanham Act") as amended in 15 U.S.C., §§ 1051 *et seq.*, and the Unfair Competition Act under 15 U.S.C., §§ 1125 *et seq.*  This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C., §§ 1331 and 1338, and 15 U.S.C., § 1121.

7.     To the extent this Complaint contains claims for relief under the laws of the Commonwealth of Massachusetts, those claims are specifically authorized to be brought in this Court under the supplemental jurisdiction provision of 28 U.S.C., § 1367 and under 28 U.S.C., § 1338.

8.     The Court has personal jurisdiction over the Defendants as they are conducting business within the Commonwealth of Massachusetts by, among other things, contracting to offer and offering goods for sale in the Commonwealth.

9.     Venue is proper in the Commonwealth of Massachusetts and in this District pursuant to 28 U.S.C., § 1391 because a substantial part of the events or omissions giving rise to this action occurred in this District and at least one of the Defendants resides in the Commonwealth and within this judicial District.

## VERIFIED FACTUAL ALLEGATIONS

### ORIGIN OF THE DUMPLING DAUGHTER CONCEPT

10.     Dumpling Daughter is a well-known fast-casual restaurant located on Center Street in Weston that features authentic Asian cuisine made from original recipes such as dumplings, buns, and noodles.  Dumpling Daughter opened on November 7, 2014 as the result of years of planning, training, and education of its owner Nadia Liu Spellman ("Spellman").

11.     Spellman is the daughter of renowned Boston restaurateurs Sally Ling and Edward Nan Liu, who owned and operated "Sally Ling's" on the Boston waterfront and in Newton Center for decades.  It had always been Spellman's goal to open a restaurant that featured and honored the traditional Chinese cuisine that she enjoyed with her family, specifically the dumplings that are immensely popular in Chinese culture but that do not enjoy a similar place in Asian restaurants located in Boston and New York.  This goal began to take real shape in 2010 when Spellman and her mother were celebrating Chinese New Year with a traditional meal of dumplings and Spellman conceived of the concept of a dumpling restaurant serving dishes from the different provinces in China and Japan she had visited throughout her life, using her mother's recipes, and identified by a brand name which would link this dumpling concept with her lineage.

12.     Spellman began scouting locations for her restaurant as early as 2011, during which time she also began crafting the menu for her restaurant concept.  Spellman's efforts in developing the restaurant's recipes, scouting locations, and ultimately in building-out and opening Dumpling Daughter required an investment of substantial time, money, and effort.

13.     Spellman identified the location on Center Street in Weston in the Spring of 2014, by which time Spellman had carefully designed the restaurant name "DUMPLiNG

4

DAUGHTER" as an homage to her mother that would also specifically identify her restaurant as being part of the Sally Ling lineage and legacy.  On April 22, 2014, DiDi Kendall Square, LLC, of which Spellman is the Manager, filed an application for registration of the word mark "Dumpling Daughter" with the United States Patent and Trademark Office ("USPTO").  On April 28, 2015, the USPTO registered "Dumpling Daughter" on the Principal Register, with registration number 4,729,071, for restaurant services, including sit-down service of food and take-out restaurant services, in Class 043 (hereinafter referred to as the "Dumpling Daughter Mark").  A true and accurate copy of Dumpling Daughter's mark and registration is attached hereto as <u>Exhibit A</u>.

### DEVELOPMENT OF DUMPLING DAUGHTER'S RECIPES AND MENU

14.     As the daughter of Sally Ling and Edward Nan Liu, Spellman received a culinary education like no other.  Using that education, Spellman crafted the recipes used for Dumpling Daughter's dishes by continually testing her family's recipes, by adopting classic offerings from Sally Ling's, and by modifying traditional and authentic dishes from different Chinese provinces for American palates.

15.     Each recipe used at Dumpling Daughter is unique and was carefully formulated by Spellman who tested and refined each through taste, texture, aesthetic appeal, and careful control of ingredient portions.  The recipes used at Dumpling Daughter are further distinguished from other restaurants as Spellman was assisted in their creation by Sally Ling, whose culinary successes are well-known and who only assists Spellman and Dumpling Daughter, thus making Dumpling Daughter's menu offerings truly unique.

16.     The methods by which Spellman has created recipes used at Dumpling Daughter, including through her years of education, life experiences, and collaborations with Sally Ling, make the Dumpling Daughter recipes trade secrets.

17.     Dumpling Daughter is careful to protect its proprietary recipes by allowing only one current employee—Dumpling Daughter's Kitchen Manager—to possess the recipes.  The Kitchen Manager retains Dumpling Daughter's recipes on his smart phone; the recipes on his phone are only available to the Kitchen Manager and he does not distribute them to any other staff members.  Rather, the Kitchen Manager instructs various kitchen personnel, including the Defendant Lin before she left the restaurant, on what to prepare and how to prepare it.  The Kitchen Manager, Spellman, and Sally Ling are the only individuals who possesses all of Dumpling Daughter's recipes.  Dumpling Daughter's Manager, Xiao Juan Huang ("Huang"), also possesses a limited number of soup and salad recipes.

18.     Beyond the unique and proprietary recipes Spellman uses, Dumpling Daughter's menu also identifies the restaurant and distinguishes it from all others.  Indeed, Dumpling Daughter's menu is at the core of the Dumpling Daughter experience and has been recognized not only for its creativity but also for its obvious connection to Spellman's famous lineage.  See October 28, 2014 Boston Magazine article, a true and accurate copy of which is attached hereto as Exhibit B.

19.     Dumpling Daughter's menu is a unique amalgamation of items from different regions and cultures that does not exist elsewhere and that Spellman carefully composed only after years of travel throughout Asia with her family.  The menu is the antithesis of the "traditional" Chinese food restaurant menu with which most of the American restaurant patrons are familiar in that it is a blend of familiar and new dishes, the marriage of which has received

rave reviews from Dumpling Daughter's customers and critics.  A true and accurate copy of the Dumpling Daughter menu is attached hereto as Exhibit C.

20.     Dumpling Daughter has continuously used the Dumpling Daughter Mark in connection with and to identify its original and proprietary recipes, its unique menu, and the Sally Ling legacy that the restaurant continues in order to distinguish its products and services from the products and services offered by other companies.  The result of Dumpling Daughter's continuous use of the Dumpling Daughter Mark is that it conveys an immediate idea of the Sally Ling lineage, the specific restaurant menu Dumpling Daughter has created, and the original and proprietary recipes Dumpling Daughter serves, such that the Dumpling Daughter Mark has acquired secondary meaning.

21.     Dumpling Daughter has made a substantial investment in the creation of the Dumpling Daughter Mark and in the promotion and protection of the Dumpling Daughter Mark, and considers the Mark among its most important and valuable assets.  Dumpling Daughter has the exclusive right, among other things, to exploit commercially the Dumpling Daughter Mark and to bar use by any third parties of any confusingly similar marks or trade names.

22.     Through extensive use, continuous promotion, and prominent recognition by noteworthy publications, the Dumpling Daughter Mark has come to be associated with Dumpling Daughter and to identify Dumpling Daughter as the source of the goods and services offered in connection with the Dumpling Daughter Mark.  Those who make up the market and potential market have come to recognize the Dumpling Daughter Mark for the food created and offered by Dumpling Daughter.

23.     Dumpling Daughter's use and promotion of the Dumpling Daughter Mark has proven enormously successful as Dumpling Daughter has created a loyal and growing following

together with a sterling culinary reputation, as exhibited by Boston Magazine just recognizing

Dumpling Daughter as one of Boston's "Best New Restaurants" for 2015.

### DEFENDANTS LIN AND XIONG COME TO WORK AT DUMPLING DAUGHTER

24.     Lin came to Dumpling Daughter in or about March 2015, when she joined the

restaurant as a member of the kitchen staff to assist the Kitchen Manager.  Lin ultimately grew

into the role of a dumpling chef.

25.     Lin's responsibilities at Dumpling Daughter included assisting in the preparation

of Dumpling Daughter's daily and weekly special dumpling offerings, as well as other food

preparation tasks as necessary and directed.  Spellman asked Lin to prepare these special

dumplings and advised and instructed Lin on how the dumplings were to be prepared.

26.     As a member of the kitchen staff, Lin became privy to certain proprietary

innovations that Dumpling Daughter had extensively tested and developed that are used to

achieve the particular characteristics of Dumpling Daughter's dishes and their appearance.  This

is information that Lin never would have had but for the trust and confidence placed in her by

Spellman.

27.     On information and belief, Lin well understood the confidential and proprietary

nature of the information she obtained and the means Dumpling Daughter took to keep such

information confidential.

28.     Xiong came to Dumpling Daughter in or about January 2015, when she joined the

restaurant as an assistant to Spellman.  Xiong is an experienced real estate investor who owns

numerous apartment rental units throughout Massachusetts.

29.     Despite never before working in a restaurant, Xiong was introduced to Spellman

by a relative and was described as exceedingly capable and confident.  Spellman trained Xiong

to assist her at Dumpling Daughter with all aspects of Dumpling Daughter's operations such that Xiong became intimately familiar with the economics, vendors, and business operations of the restaurant.

30.     Xiong would often visit Dumpling Daughter on her off days and observe the restaurant's operations without having any business or employment reason for being on site. Defendant Li accompanied Xiong during at least one such visit to Dumpling Daughter.  Xiong also frequently offered to assist in areas of Dumpling Daughter's operations that allowed her to gain a greater and specific understanding of Dumpling Daughter's culinary operations, including but not limited to numerous instances of Xiong assisting in the kitchen which was never under her job description and for which she had no prior experience or training.

31.     Xiong informed Spellman on July 6, 2015 that she needed to leave Dumpling Daughter because of family obligations but that she would return to the restaurant.  Also in early-July 2015, Lin told Spellman that she would shortly be leaving her job at Dumpling Daughter to visit China for two months and that she would call Spellman upon her return.

32.     On information and belief, the actions of Lin and Xiong in the months leading up to their departures from Dumpling Daughter, together with the involvement and assistance of Li, were an orchestrated scheme to learn all that they could in order to copy the Dumpling Daughter Mark in a virtually identical restaurant that would trade on the goodwill of Dumpling Daughter by improperly infringing on the Dumpling Daughter Mark and unfairly competing with Dumpling Daughter by creating confusion amongst consumers as to the source of the goods and services Dumpling Girl provides by, among other means, misappropriating Dumpling Daughter's proprietary recipes and cloning Dumpling Daughter's menu.

**DISCOVERY THAT THE DEFENDANTS OPENED DUMPLING GIRL, STOLE THE TRADE SECRETS, PROPRIETARY, AND CONFIDENTIAL INFORMATION OF DUMPLING DAUGHTER, ARE INFRINGING ON THE DUMPLING DAUGHTER MARK, AND ARE UNFAIRLY COMPETING WITH DUMPLING DAUGHTER**

33.     In mid-September 2015, Spellman discovered that Xiong, Lin, and Li opened Dumpling Girl in Millbury, Massachusetts, a virtually identical restaurant to Dumpling Daughter that infringes on the Dumpling Daughter Mark and that unfairly competes with Dumpling Daughter by using a confusingly similar name in the area where Dumpling Daughter is known and uses the Dumpling Daughter Mark, a virtually identical menu comprised almost entirely of dishes Dumpling Daughter created that currently appear or that have appeared on the Dumpling Daughter menu, and the proprietary recipes of Dumpling Daughter.

34.     The "Dumpling Girl" name is strikingly similar to the "Dumpling Daughter" name and Mark.  There is little material difference in the sight, sound, and meaning between the trade names.

35.     Spellman had received a customer inquiry in late August that referenced a rumor about Dumpling Daughter opening a second location in Millbury, to which she replied that no such location was planned in Millbury.  Then on September 14, 2015, Spellman received another customer inquiry that asked if Dumpling Daughter had opened in Millbury as the customer had seen a sign.  Spellman corrected this confused customer that this was not true.  It is now apparent that both of these confused customers had confused Dumpling Girl with Dumpling Daughter. True and accurate copies of the August 27, 2015 and September 14, 2015 inquiries from these confused consumers are attached hereto as Exhibit D and E.

36.     The inquiries Spellman received from these prospective customers make it clear that public confusion has already arisen as to whether Dumpling Girl is affiliated with or sponsored by Dumpling Daughter.  To the extent that these and other prospective customers for

whom Dumpling Girl and Dumpling Daughter compete in the same market and the same area mistakenly believe that Dumpling Girl is authorized, licensed, endorsed or sponsored by Dumpling Daughter, and associate their experience with Dumpling Girl, owing to the confusion created by the virtually identical trade dress the Defendants have pirated, there is a grave risk of tarnishment to the Dumpling Daughter Mark and Dumpling Daughter's trade dress.

37.     Spellman learned in late-September of 2015, that Dumpling Girl had opened and that the Dumpling Girl name, recipes, and menu are virtually identical to Dumpling Daughter and constitute an infringement on the Dumpling Daughter Mark and unfair competition, as reported by Dumpling Daughter Manager Huang.

38.     Huang, who was friendly with Xiong, visited Dumpling Girl at Xiong's request on September 21, 2015.  While there, Huang immediately witnessed that Dumpling Girl operated exactly as Dumping Daughter does in that the ordering, check-out, food preparation, and food delivery operations are virtually identical.  Huang also observed that the Dumpling Girl menu was virtually identical to the Dumpling Daughter menu, even to the extent of using the same color schemes.  A true and accurate copy of the Dumpling Girl menu as of September 21, 2015 is attached hereto as Exhibit F.

39.     A comparison of the Dumpling Girl menu to the Dumpling Daughter menu
confirms that of the 52 total items on the Dumpling Girl menu, 41 of them are identical or
virtually identical to the items from the Dumpling Daughter menu, down to the punctuation.  For
example, among those 41 instances of deliberate copying is the pork ramen noodle dish that
Dumpling Girl now offers:

| Dumpling Daughter | Dumpling Girl |
|---|---|
| **Three Day Pork Ramen**<br>  NOT the instant kind!!!!!!  Classic pork broth, fresh ramen noodles, pork belly, soft egg, bamboo, red pickled ginger, kombu seaweed, scallions. | **Pork Ramen**<br>  NOT the instant kind!!!!!  Classic pork broth, fresh ramen noodles, pork belly, soft egg, bamboo, red pickled ginger kombu seaweed, scallions. |

40.     While at Dumping Girl on September 21, 2015, Huang also immediately observed
that the restaurant immediately appeared messy, staffing was inadequate, service was slow, and
overall the Defendants did not appear ready to operate the restaurant.  Therefore, if Dumpling
Girl was to be confused with Dumpling Daughter, it would bring discredit on and tarnish
Dumpling Daughter and the Dumpling Daughter Mark.

41.     Huang, Xiong, and Lin discussed the obvious copying by Dumpling Girl of
Dumpling Daughter's menu during Huang's September 21, 2015 visit.  Although Lin told Huang
that she would prefer to add menu items that were unique to Dumpling Girl rather than simply
copy all of the menu items of Dumpling Daughter, Xiong retorted in her native Mandarin that
copying Dumpling Daughter was the purpose of what the Defendants were doing.

42.     As a dumpling chef at Dumpling Daughter, Lin had limited access to Dumpling
Daughter's recipes while working under the direction of Dumpling Daughter's Kitchen Manager,
Spellman, and Sally Ling.  Dumpling Daughter entrusted Lin with this limited access only in

order that she could perform her functions as a kitchen assistant, and wholly without any authorization to disclose the same.  On information and belief, Lin misappropriated Dumpling Daughter's proprietary recipes while working at Dumpling Daughter, has used and continues to use such recipes at Dumpling Girl, and with Xiong inquired of Huang as to Dumpling Daughter's recipes in furtherance of the Defendants' efforts to misappropriate Dumpling Daughter's proprietary recipes and to infringe on the Dumpling Daughter Mark.

43.     During their conversation on September 21, 2015, Xiong also asked Huang whether she was interested in working at Dumpling Girl.  On information and belief, Xiong requested that Huang join Dumpling Girl in order to further the Defendants' infringement upon the Dumpling Daughter Mark and in order to continue to unfairly compete with Dumpling Daughter by, among other means, having Huang reveal information concerning Dumpling Daughter's current culinary offerings and menu changes that Dumpling Girl would then pirate and clone, continuing to cause significant customer confusion as to the source of Dumpling Daughter's menu offerings.

44.     After Huang informed Spellman of her discoveries on September 21, 2015, at Dumpling Girl, Spellman suspected Dumpling Girl may attempt to infringe on the Dumpling Daughter Mark in other ways.  On September 22, 2015, Spellman contacted Dumpling Daughter's vendor in New Jersey that manufactures specific dumplings and buns for the restaurant from original recipes Spellman provided.

45.     This vendor informed Spellman that it had already received a call from the Defendants who listed the dumplings and buns that the vendor manufactures for Dumpling Daughter and asked the vendor to manufacture for their restaurant the exact authentic-recipe

dumplings and buns it manufactures for Dumpling Daughter.  The vendor refused the

Defendants' requests.

46.     The Defendants were never authorized, licensed, nor granted permission to use

the Dumpling Daughter Mark, or Dumpling Daughter's recipes or menu, in connection with

restaurant and/or food services.  The Defendants' use of the Dumpling Daughter Mark and their

pirating and cloning of Dumpling Daughter's proprietary recipes and distinctive menu has

already and is likely to cause further confusion and mistake among consumers, and to deceive

consumers as to the source, quality, and nature of Defendants' goods and services.

47.     Having learned of the extent of Dumpling Girl's deceptive and willful conduct in

misappropriating Dumpling Daughter's proprietary recipes and menu and in infringing on the

Dumpling Daughter Mark, and having seen the actual customer confusion caused by Dumpling

Girl's infringement, Dumpling Daughter transmitted a Cease and Desist letter to Lin, Xiong, and

Li on September 23, 2015.  A true and accurate copy of this September 23, 2015 letter is

attached hereto as Exhibit G.

48.     This initial Cease and Desist letter expressly informed the Defendants that

Dumpling Daughter was a registered word mark that Dumpling Girl was infringing upon,

highlighted the customer confusion that the name Dumpling Girl and that Dumpling Girl's use of

a virtually identical menu will cause, and placed the Defendants on notice of Dumpling

Daughter's claim for theft of trade secrets stemming from the Defendants' theft of the original

recipes that Spellman had spent years learning and perfecting.

49.     This initial Cease and Desist letter requested that the Defendants provide written

assurances by October 2, 2015 that the Defendants cease and desist from using the name

Dumpling Girl and change Dumpling Girl's menu so that it is not a copy or near copy of Dumpling Daughter's.

50.     Dumpling Daughter sent the Defendants a second Cease and Desist letter on September 25, 2015 that reiterated the demand for written assurances by October 2, 2015 that the Defendants will discontinue their infringing and deceptive conduct.  This second Cease and Desist letter also placed the Defendants on notice that their conduct constitutes a claim under Massachusetts General Laws Chapter 93A for both unfair competition and unfair and deceptive trade practices.  A true and accurate copy of this September 25, 2015 Cease and Desist letter is attached hereto as <u>Exhibit H</u>.

51.     The Defendants have not responded to either of the Cease and Desist letters Dumpling Daughter sent.  To the contrary, now with express knowledge as to Dumpling Daughter's trademark rights, the Defendants continue to use the deliberately confusing name "Dumpling Girl" they selected in an attempt to cause confusion in the marketplace and capitalize on the goodwill and reputation that has been developed by and is associated with "Dumpling Daughter."  The Defendants have acknowledged their wrongdoing and dismissed any notion that they must alter their deceptive conduct.

52.     Immediately following their receipt of both Cease and Desist letters, while Dumpling Girl continued to infringe on the Dumpling Daughter Mark, Xiong cavalierly disregarded the seriousness on multiple occasions.

53.     In a conversation with Spellman's cousin on September 26, 2015, Xiong brushed off any consequence coming from the Defendants' conduct by stating that "anyone can copy, everybody copies."  Xiong also said during this conversation that Spellman "can chase me for years because the LLC doesn't have any money" and that the Defendants would simply operate

the Millbury Dumpling Girl for a few years before closing that location and opening a new Dumpling Girl under a new LLC.

54.     In a separate conversation with Dumpling Daughter's food assembler, Xiong expressed concern by asking "Is Sally mad at me" in reference to Spellman's mother, Sally Ling, while simultaneously admitting "I know it's not really right."

55.     Huang again visited Dumpling Girl on September 28, 2015.  While there, Xiong and Lin asked Huang to sample various menu items and asked her how the items tasted in comparison to the offerings at Dumpling Daughter.  Xiong and Lin also repeatedly asked Huang about any new menu selections and specials that Dumpling Daughter was offering.

56.     During her visit to Dumpling Girl on September 28, 2015, Xiong also referenced to Huang the Cease and Desist letters that the Defendants had received, explaining to Huang that the Dumpling Girl menu copied from Dumpling Daughter was simply the menu used to start Dumpling Girl and that Dumpling Girl may add some dishes to the initial menu.

57.     The Defendants' misappropriation of Dumpling Daughter's name, proprietary recipes and menu, its infringement of the Dumpling Daughter Mark, and its unfair competition, has caused and continues to cause significant damages and irreparable harm to Dumpling Daughter.

## COUNT I
### (Federal Trademark Infringement—15 U.S.C., §§ 1114 et seq.)
### (Against All Defendants)

58.     Dumpling Daughter incorporates and re-alleges by reference the above paragraphs 1 through 57 as if expressly set forth herein.

59.     Dumpling Daughter is the legal owner of the Dumpling Daughter Mark, has not abandoned the Dumpling Daughter Mark since its first use, and has been, and continues to be, in continuous use in interstate and intrastate commerce.

60.     Defendants' unauthorized use, reproduction, copying or colorable imitations of the Dumpling Daughter Mark, as explained above, and as done by both Dumpling Girl, LLC as well as the individual Defendants Lin, Xiong, and Li through their personal participation, has caused and is likely to continue to cause confusion, mistake, and/or deception among consumers as to the source, quality, and/or nature of Defendants' goods and services.  Defendants' use, reproduction, copying or colorable imitation of the Dumpling Daughter Mark also likely creates the misconception among consumers that Dumpling Daughter somehow ratifies or authorizes the Defendants' infringing use of the Dumpling Daughter Mark and/or that Dumpling Daughter is affiliated in some manner with the Defendants' business, when such is not the case.

61.     Dumpling Daughter never gave Defendants permission to use the Dumpling Daughter Mark and Dumpling Daughter, as owner of the Dumpling Daughter Mark, objects to Defendants' past, and continued, infringing use of the Dumpling Daughter Mark and/or any confusingly similar derivations thereof.

62.     While Dumpling Daughter has notified Defendants that their use of the Dumpling Daughter Mark and/or any confusingly similar derivations thereof is unauthorized, Defendants continue to use and extensively exploit, for their own commercial advantage, the Dumpling Daughter Mark, to the detriment of Dumpling Daughter as well as the consuming public.

63.     Because Defendants' continued use of the Dumpling Daughter Mark and/or any confusingly similar derivations thereof prevents Dumpling Daughter from exercising exclusive control over its intellectual property rights and because Defendants' continued use of the

Dumpling Daughter Mark and/or any confusingly similar derivations thereof is likely to continue to cause confusion, mistake, and/or deception as to the source, affiliation, or sponsorship of the goods and services that Defendants advertise, promote, and/or sell through their infringing use of the Dumpling Daughter Mark, Dumpling Daughter lacks an adequate remedy at law.  Unless temporary, preliminary and permanent injunctions are issued enjoining Defendants from any continuing or future infringing use of the Dumpling Daughter Mark, Dumpling Daughter will continue to sustain irreparable damage.  Indeed, Defendants have already proven themselves to be willful infringers who have complete disregard of the intellectual property rights of Dumpling Daughter.  Pursuant to 15 U.S.C., § 1116(a), Dumpling Daughter is entitled to an order enjoining Defendants, and each of them, from using the Dumpling Daughter Mark to advertise, market, and/or sell Defendants' goods or services.

64.     As a direct and proximate cause of Defendants' infringing conduct, Dumpling Daughter has been damaged and will continue to be damaged.  Pursuant to 15 U.S.C., § 1117(a), Dumpling Daughter is entitled to an order requiring Defendants to account to it for any and all profits and other ill-gotten gains Defendants derived from their unauthorized and infringing use of the Dumpling Daughter Mark, as detailed herein, and to an order awarding all damages sustained by Dumpling Daughter by reason of Defendants' infringing conduct.

65.     As evidenced by, *inter alia*, Defendants' refusal to cease further use of the Dumpling Daughter Mark after receiving notice of Dumping Daughter's objections to Defendants' infringement of the Dumpling Daughter Mark, Defendants' conduct was intentional and in conscious disregard of Dumpling Daughter's rights.  Dumpling Daughter, therefore, is entitled to an award of treble damages and/or enhanced profits from Defendants.

## COUNT II
### (Federal Unfair Competition and False Advertising—15 U.S.C., § 1125(a))
### (Against All Defendants)

66.     Dumpling Daughter incorporates and re-alleges by reference the above paragraphs 1 through 65 as if expressly set forth herein.

67.     Dumpling Daughter is the legal owner of the Dumpling Daughter Mark, has not abandoned the Dumpling Daughter Mark since its first use, and the Dumpling Daughter Mark has been, and continues to be, in continuous use.  Despite knowledge of Dumpling Daughter's ownership interests in the Dumpling Daughter Mark, Defendants, and each of them, have made, and continue to make, use in commerce of the Dumpling Daughter Mark and/or any confusingly similar derivations thereof without Dumpling Daughter's permission.

68.     Defendants' unauthorized use of the Dumpling Daughter Mark, as done by both Dumpling Girl, LLC as well as the individual Defendants Lin, Xiong, and Li through their personal participation, creates a false association between Defendants and Dumpling Daughter. Defendants' unauthorized infringing use of the Dumpling Daughter Mark and/or any confusingly similar derivations thereof also tends to cause confusion, mistake, and/or deception among consumers as to the source, quality, and nature of Defendants' goods and services.

69.     Defendants, and each of them, have engaged in fraudulent business practices, false advertising, and unfair competition by using the Dumpling Daughter Mark and/or any confusingly similar derivations thereof, associated goodwill, and other intangible rights of Dumpling Daughter without permission in an attempt to pass off Defendants' goods as coming from, being sponsored by, and/or affiliated with Dumpling Daughter, when such is not the case.

70.     Defendants' use of the Dumpling Daughter Mark and/or any confusingly similar derivations thereof, goodwill, and other intangible rights of Dumpling Daughter is in direct

violation of 15 U.S.C., § 1125(a) et seq., and represents false advertising and false designation of source entitling Dumpling Daughter to all remedies available under the law.

71.      As a direct and proximate result of the foregoing conduct, Dumpling Daughter is entitled to damages against all Defendants, and each of them, in an amount according to proof at trial, to a temporary, preliminary, and permanent injunction, and to any and all other relief the Court deems just and proper under the law.

## COUNT III
### (Unfair Methods of Competition / Deceptive Acts and Practices—M.G.L. c. 93A, §§ 2 and 11)
### (Against All Defendants)

72.      Dumpling Daughter incorporates and re-alleges by reference the above paragraphs 1 through 71 as if expressly set forth herein.

73.      Defendants, and each of them, are engaged in the conduct of trade or commerce within the meaning of M.G.L. c. 93A.  The foregoing conduct by Defendants constitutes a pattern of unfair, deceptive, and fraudulent acts and practices within the meaning of M.G.L. c. 93A:

a.      Dumpling Daughter is the legal owner of the Dumpling Daughter Mark, has not abandoned the Dumpling Daughter Mark since its first use, and the Dumpling Daughter Mark has been, and continues to be, in continuous use.  Despite knowledge of Dumpling Daughter's ownership interests in the Dumpling Daughter Mark, Defendants, and each of them, have made, and intentionally continue to make, use in commerce of the Dumpling Daughter Mark without Dumpling Daughter's permission.

b.      Dumpling Daughter never gave Defendants permission to use the Dumpling Daughter Mark or any similar marks or engage in the offending

20

activities.  After discovering Defendants' infringing use of the Dumpling

Daughter Mark, Dumpling Daughter demanded that the Defendants cease

further use of the Dumpling Daughter Mark.  Defendants have refused to

cease further use and continue, to this day, to misappropriate Dumpling

Daughter's rights in the Dumpling Daughter Mark.

c.       Defendants, and each of them, have engaged in a pattern of unfair,

deceptive, and fraudulent acts to enrich themselves by misappropriating

Dumpling Daughter's exclusive rights to the Dumpling Daughter Mark

and using it for their own benefit.

d.       Dumpling Daughter never gave Defendants permission to use the original

and proprietary recipes Dumpling Daughter created, nor did Dumpling

Daughter ever give Defendants permission to use, copy, or pirate the

original recipes and/or the distinctive menu that Dumpling Daughter

created.  After discovering Defendants' willful and knowing wrongdoing

of pirating the Dumpling Daughter's original recipes and distinctive menu,

Dumpling Daughter demanded that the Defendants cease further use of

Dumpling Daughter's recipes and menu.  Defendants have refused to

cease further use and continue, to this day, to misappropriate Dumpling

Daughter's proprietary recipes and distinctive menu.

e.       Defendants, and each of them, have engaged in fraudulent business

practices, false advertising, and unfair competition by using the Dumpling

Daughter Mark, associated goodwill, and other intangible rights of

Dumpling Daughter, including but not limited to Dumpling Daughter's

original and proprietary recipes and Dumpling Daughter's distinctive

menu, without permission in an improper attempt to pass off Defendants'

goods as coming from, being sponsored by, and/or affiliated with

Dumpling Daughter.

74.     Defendants' unauthorized use and intentional infringement of the Dumpling

Daughter Mark, as explained above, creates a false association between Defendants and

Dumpling Daughter and is likely to cause confusion, mistake, and/or deception among

consumers as to the source, quality, and/or nature of Defendants' goods and services.

75.     Dumpling Daughter has been damaged and will continue to be damaged by

Defendants' unlawful, unfair, and fraudulent and deceptive business practices as alleged herein.

Dumpling Daughter, therefore, is entitled to a preliminary and permanent injunction enjoining

Defendants from using the Dumpling Daughter Mark to advertise, market, and/or sell

Defendants' goods or services.  Defendants have profited from their activities and, unless their

conduct is enjoined, Dumpling Daughter will continue to suffer irreparable harm that cannot be

adequately calculated or compensated by monetary damages.  Accordingly, injunctive relief is

proper pursuant to M.G.L. c. 93A, § 11.

76.     As a direct and proximate result of Defendants' conduct, Dumpling Daughter has

been harmed and is entitled to damages against all Defendants, and each of them, in an amount

according to proof at trial and to any and all other relief the Court deems just and proper under

the law.

77.     Dumpling Daughter is informed and believes, and thereon alleges, that

Defendants' conduct was intentional, willful, wanton, malicious, and in conscious disregard of

Dumpling Daughter's rights, thereby justifying an award of three times its damages, together with reasonable attorneys' fees, pursuant to M.G.L. c. 93A, § 11.

78.     Upon information and belief, Defendants Lin and Xiong direct, control, ratify, participate in, and are the moving force behind the infringing activity, and are therefore personally liable for such infringement.

**COUNT IV**
**(Trademark Infringement Under M.G.L. c. 110H)**
**(Against All Defendants)**

79.     Dumpling Daughter incorporates and re-alleges by reference the above paragraphs 1 through 78 as if expressly set forth herein.

80.     Dumpling Daughter owns and enjoys common law trademark rights which are superior to any rights Defendants may claim to any similar mark.

81.     As such, the Dumpling Daughter Mark is entitled to protection under M.G.L. c. 110H, § 13.

82.     Defendants' unauthorized use of the Dumpling Daughter Mark in Massachusetts, as done by both Dumpling Girl, LLC as well as the individual Defendants Lin, Xiong, and Li through their personal participation, was intended to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association of Defendants with Plaintiff as to the origin, sponsorship, or approval of Defendants' goods.

83.     Defendants' infringement of the Dumpling Daughter Mark has been willful, wanton, reckless, and done with full knowledge and disregard of Plaintiff's prior use and rights in its Mark.

84.     Defendants' unauthorized use of a mark confusingly similar to the Dumpling Daughter Mark in Massachusetts has caused and will continue to cause substantial and

irreparable injury to Plaintiff's business reputation unless the Defendants' use of the Dumpling

Daughter Mark is enjoined by this Court.

85.     Plaintiff is entitled to injunctive relief to enjoin Defendants' further use of the

Dumpling Daughter Mark under M.G.L. c. 110H, § 3.

**COUNT V**
**(Massachusetts Common Law Trademark Infringement)**
**(Against All Defendants)**

86.     Dumpling Daughter incorporates and re-alleges by reference the above

paragraphs 1 through 85 as if expressly set forth herein.

87.     The Dumpling Daughter Mark is the proprietary property of Dumpling Daughter,

which possesses certain common law trademark rights and protections in the Dumpling Daughter

Mark under the common law of the Commonwealth of Massachusetts.

88.     Defendants' unauthorized use and intentional infringement of the Dumpling

Daughter Mark, as explained above, and as done by both Dumpling Girl, LLC as well as the

individual Defendants Lin, Xiong, and Li through their personal participation, is likely to cause

confusion, mistake, and/or deception among consumers as to the source, quality, and/or nature of

Defendants' goods and services, thereby, committing common law trademark infringement.

89.     Defendants, and each of them, have engaged in unfair competition by using a

mark confusingly similar to the Dumpling Daughter Mark, associated goodwill, and other

intangible rights of Dumpling Daughter without permission in an attempt to pass off Defendants'

goods as coming from, being sponsored by, and/or affiliated with Dumpling Daughter.

Defendants' acts and conduct as set forth herein constitutes unfair competition, willful, unfair,

and deceptive acts or practices within the Commonwealth of Massachusetts and violation of

Massachusetts common law.

90.     Dumpling Daughter never gave Defendants permission to use the Dumpling Daughter Mark or any similar marks or engage in the offending activities.  After discovering Defendants' infringing use of the Dumpling Daughter Mark and/or any confusingly similar derivations thereof, Dumpling Daughter demanded that the Defendants cease further use of the Dumpling Daughter Mark.  Defendants, however, have refused to cease further use and continue, to this day, to misappropriate Dumpling Daughter's rights in the Dumpling Daughter Mark.

91.     Dumpling Daughter has been damaged and will continue to be damaged by Defendants' infringing activities.

92.     As a direct and proximate result of the foregoing conduct, Dumpling Daughter is entitled to damages against all Defendants, and each of them, in an amount that is subject to proof at trial, to a preliminary and permanent injunction, and to any and all other relief the Court deems just and proper under the law.

93.     Dumpling Daughter is informed and believes, and thereon alleges, that Defendants' conduct was willful, wanton, malicious, and in conscious disregard of Dumpling Daughter's rights, thereby justifying an award of punitive and/or exemplary damages in an amount according to proof at trial.

94.     Upon information and belief, Defendants Lin and Xiong direct, control, ratify, participate in, and are the moving force behind the infringing activity, and are, therefore, personally liable for such infringement.

**COUNT VI**
**(Massachusetts Common Law Unfair Competition)**
**(Against All Defendants)**

95.     Dumpling Daughter incorporates and re-alleges by reference the above paragraphs 1 through 94 as if expressly set forth herein.

96.     Dumpling Daughter is the legal owner of the Dumpling Daughter Mark, has not abandoned the Dumpling Daughter Mark since its first use, and the Dumpling Daughter Mark has been, and continues to be, in continuous use.  Despite knowledge of Dumpling Daughter's ownership interests in the Dumpling Daughter Mark, Defendants, and each of them, have made, and intentionally continue to make, use in commerce of the Dumpling Daughter Mark without Dumpling Daughter's permission.

97.     Defendants, and each of them, have engaged in a pattern of unfair, deceptive, and fraudulent acts to enrich themselves by misappropriating Dumpling Daughter's rights to the Dumpling Daughter Mark and using them for their own benefit.

98.     Defendants, and each of them, have engaged in a pattern of unfair, deceptive, and fraudulent acts to enrich themselves by misappropriating the original recipes and the distinctive menu that Dumpling Daughter created.

99.     Defendants' unauthorized use of the Dumpling Daughter Mark, unauthorized theft and use of Dumpling Daughter's original recipes, and unauthorized cloning and use of Dumpling Daughter's distinctive menu creates a false association between Defendants and Dumpling Daughter.  Defendants' unauthorized use of the Dumpling Daughter Mark, original recipes, and distinctive menu also tends to cause confusion, mistake, and/or deception among consumers as to the source, quality, and nature of Defendants' goods and services.

100.    Defendants, and each of them, have engaged in fraudulent business practices, false advertising, and unfair competition by using the Dumpling Daughter Mark, associated goodwill, and other intangible rights of Dumpling Daughter, including but not limited to Dumpling Daughter's original and proprietary recipes and Dumpling Daughter's distinctive

menu without permission in an attempt to pass off Defendants' goods as coming from, being sponsored by, and/or affiliated with Dumpling Daughter.

101.    Dumpling Daughter has been damaged and will continue to be damaged by Defendants' unlawful, unfair, and/or fraudulent business practices and misleading advertising as alleged herein.  Dumpling Daughter, therefore, is entitled to a preliminary and permanent injunction enjoining Defendants from using the Dumpling Daughter Mark to advertise, market, and/or sell Defendants' goods and services.

102.    As a direct and proximate result of the foregoing conduct, Dumpling Daughter has been harmed and is entitled to damages against all Defendants, and each of them, in an amount according to proof at trial and to any and all other relief the Court deems just and proper under the law.

103.    Dumpling Daughter is informed and believes, and thereon alleges, that Defendants' conduct was willful, wanton, malicious, and in conscious disregard of Dumpling Daughter's rights, thereby justifying an award of punitive and/or exemplary damages in an amount according to proof at trial.

104.    Upon information and belief, Defendants Lin and Xiong direct, control, ratify, participate in, and are the moving force behind the infringing activity, and are therefore personally liable for such infringement.

## COUNT VII
### (Misappropriation of Trade Secrets, Proprietary and Confidential Information)
### (Against All Defendants)

105.    Dumpling Daughter incorporates and re-alleges by reference the above paragraphs 1 through 104 as if expressly set forth herein.

106.    Dumpling Daughter has expended substantial resources and effort to create the proprietary and original recipes that are among Dumpling Daughter's most valuable assets, some of which Dumpling Daughter entrusted to Lin during the course of her employment in order so that she could perform her function at Dumpling Daughter as a kitchen assistant, wholly without any authorization to disclose or use same for any reason.

107.    Dumpling Daughter has taken reasonable precautions to protect the confidentiality of its trade secrets and other confidential business information.

108.    As set forth above, Lin and the other Defendants misappropriated Dumpling Daughter's trade secrets, proprietary and confidential information which is the property of Dumpling Daughter and which the Defendants have used for their own personal benefit.

109.    The Defendants' conduct constitutes the misappropriation of Dumpling Daughter's trade secrets and other confidential information.

110.    As a result of the Defendants' misappropriation, Dumpling Daughter has suffered and will continue to suffer substantial and irreparable harm and injury, for which there is no adequate remedy at law.

111.    As a result of the Defendants' misappropriation, Dumpling Daughter has suffered and will continue to suffer damages.

## COUNT IX
**(Conversion of Trade Secrets, Proprietary and Confidential Information)**
**(Against All Defendants)**

112.    Dumpling Daughter incorporates and re-alleges by reference the above paragraphs 1 through 111 as if expressly set forth herein.

113.     Dumpling Daughter has had, at all relevant time, an ownership and/or possessory interest in its trade secrets, proprietary and confidential information including, but not limited to, its original recipes.

114.     Defendants, and each of them, wrongly took trade secrets, proprietary and confidential information and materials from Dumpling Daughter.

115.     Defendants, and each of them, have wrongfully and intentionally exercised control and/or dominion over certain of Dumpling Daughter's trade secrets, proprietary and confidential information as alleged above.

116.     Defendants did not legitimately acquire possession of these items under a good faith claim of right.

117.     Dumpling Daughter has suffered and continues to suffer damages as a direct and proximate cause of Defendants' unlawful actions in an amount to be determined at trial.

**COUNT VIII**
**(Unjust Enrichment)**
**(Against All Defendants)**

118.     Dumpling Daughter incorporates and re-alleges by reference the above paragraphs 1 through 117 as if expressly set forth herein.

119.     The Defendants, and each of them, were conferred a recognized benefit through accessing and taking or receiving Dumpling Daughter's trade secrets, proprietary and confidential information.

120.     Defendants, and each of them, seek to take improper advantage of the substantial time, money and effort Dumpling Daughter expended in the creation and operation of Dumpling Daughter without duly compensating Dumpling Daughter.

121.    As a result of their conduct in misappropriating and converting Dumpling Daughter's trade secrets, proprietary and confidential information, the Defendants have been and will continue to be unjustly enriched as the Defendants have used, and are in a position to continue to use, such information.

122.    As a result of the Defendants' conduct as described herein, Dumpling Daughter is entitled to damages including but not limited to damages commensurate with the benefit conferred upon the Defendants.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court enter judgment in its favor and against the Defendants as to all Counts, together with the following relief:

A.    For a preliminary and permanent injunction that enjoins all Defendants, and each of them, and their agents, affiliates, parent companies, subsidiaries, servants, employees, and all persons acting in privity or in concert with them, from, directly or indirectly:

(i)    Using the Dumpling Daughter Mark or trade name in connection with Defendants' goods, marketing, advertising, or promotional materials, or otherwise in connection with Defendants' business;

(ii)    Using confusingly similar variations of the Dumpling Daughter Mark or trade name, specifically including but not limited to "Dumpling Girl," causing a likelihood of confusion, deception, and/or mistake as to the source, nature, and/or quality of Defendants' goods or services;

> (iii)  Using confusingly similar variations of the Dumpling Daughter menu, causing a likelihood of confusion, deception, and/or mistake as to the source, nature, and/or quality of Defendants' goods or services;
>
> (iv)  Using confusingly similar variations of the Dumpling Daughter recipes, causing a likelihood of confusion, deception, and/or mistake as to the source, nature, and/or quality of Defendants' goods or services;
>
> (v)  Otherwise infringing upon the Dumpling Daughter Mark or trade name; and
>
> (vi)  Continuing to perform in any manner whatsoever any of the acts complained of in this Complaint.

B.  For an Order directing the Defendants, and each of them, to file with this Court and serve on Plaintiff, within 10 days after service of an injunction, a written report, signed under oath, setting forth, in detail, the manner and form by which Defendants have complied with the injunction.

C.  For an Order that Defendants pay to Plaintiff compensatory damages for the injuries sustained by Plaintiff in consequence of the unlawful acts alleged herein and that such damages be trebled pursuant to 15 U.S.C., § 1117, M.G.L. c. 93A, and any other applicable law because of the willful and knowing unlawful acts as alleged herein.

D.  For an Order requiring the Defendants to account for and pay over to Plaintiff all gains, profits, and advantages derived by them from the willful and knowing unlawful activities alleged herein pursuant to 15 U.S.C., § 1117, M.G.L. c. 110H, and any other applicable law.

E.  For an Order awarding Plaintiff its costs and attorneys' fees incurred in prosecuting this action.

F.  For an Order awarding Plaintiff pre- and post-judgment interest.

G.    For an Award awarding Plaintiff such further relief as the Court deems just and proper.

## JURY DEMAND

Dumpling Daughter hereby demands a trial by jury as to all claims or issues so triable.

> DIDI KENDALL SQUARE, LLC d/b/a
> DUMPLING DAUGHTER,
>
> By its attorneys,
>
>
> /s/ Kenneth A. Sweder
> _____
> Kenneth A. Sweder, BBO #: 489840
> Brian M. Haney, BBO #: 661674
> SWEDER & ROSS LLP
> 131 Oliver Street
> Boston, MA 02110
> P: (617) 646-4466
> F: (617) 646-4470
> ksweder@sweder-ross.com
> bhaney@sweder-ross.com

DATED: October 6, 2015

## VERIFICATION

I, Nadia Liu Spellman, hereby state under the pains and penalties of perjury that I have reviewed the foregoing Verified Complaint and that the assertions contained therein are accurate to the best of my knowledge.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 6TH DAY OF OCTOBER, 2015

_____
Nadia Liu Spellman